DAYTON HUDSON DEPARTMENT
STORE COMPANY, Plaintiff,

v.

AUTO–OWNERS INSURANCE
COMPANY, Defendant.

No. 5:94–CV–151.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 20, 1995.

Peter S. Shek, Saginaw, MI, for plaintiff.

John P. Seyfried, Garan, Lucow, Miller, Seward & Becker, P.C., Port Huron, MI, for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

The parties, a no-fault carrier and an employee benefit plan, dispute their liability for medical benefits required by their mutually insured for injuries sustained in an auto accident. Defendant Auto–Owners Insurance Company ("Auto–Owners") moves to dismiss and for summary judgment on plaintiff's claim for reimbursement. For the following reasons, the Court will grant defendant's motion.

### I.

While operating an automobile, Steve Boukis was injured in a car accident. Defendant Auto–Owners insured Boukis under a no-fault policy, but refused to pay Boukis' medical expenses. Boukis also was covered under an employee health care plan ("the Plan") that was provided by plaintiff Dayton Hudson Department Store Company ("Dayton Hudson"). The Plan was subject to the Employee Retirement Income Security Act ("ERISA"), Title 29 United States Code Sections 1001 to 1461. The policy documentation for both the no-fault insurance and the Plan contained coordination of benefits ("COB") provisions. Plaintiff paid approximately $22,000 of Boukis' medical expenses incident to the accident. Plaintiff claims that as subrogee to Boukis, it is entitled to reimbursement from defendant.

### II.

In reviewing a motion to dismiss, a court must accept all well-pleaded allegations of the complaint as true and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Saylor v. Parker Seal Co.,* 975 F.2d 252, 254 (6th Cir.1992).

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In ruling on a motion for summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

### III.

■ Defendant contends that the Plan does not authorize the plaintiff as subrogee

to make a claim directly against defendant. Rather, defendant maintains that plaintiff may proceed only against a Plan participant who has been "paid" for an injury. Defendant also argues that under the terms of both the Plan and the no-fault policy the Plan is primarily responsible for Boukis' medical expense benefits.

### A. Subrogation

The Plan contains an explicit subrogation provision, which provides:

> If you are paid for any injury or illness resulting from the act or omission of someone else ... the Company has the right of reimbursement of its cost for the medical benefits provided for treating that injury or illness.

> In such cases, the Company requires that you complete a subrogation/right of reimbursement agreement. This entitles the Company to recover the cost and the right, if needed, to bring suit in your name.

Defendant claims that under the first paragraph, plaintiff (the Company) only has a right of reimbursement from the Plan participant who has been "paid for any injury or illness." Further, defendant contends that the second paragraph, dealing with subrogation, only applies to "such cases," as covered in the first paragraph where a Plan participant already has been "paid," which is not the present case.

The Court finds that defendant's reading is untenable. If the subrogation provision is read as defendant suggests, a plaintiff would bring a suit against the Plan participant in the name of the Plan participant. This would be an unreasonable construction. Although the Court notes that the subrogation clause could be more clearly drafted, it clearly does afford plaintiff the right to bring a suit against defendant in the Plan participant's name.

### B. Coordination of Benefits

Defendant contends that the Plan is primarily liable for coverage of Boukis' medical expenses because the COB clause of the no-fault policy effectively subordinates its coverage to that of the plaintiff. Defendant acknowledges that ERISA preempts state law where a conflict exists. *Auto Club Ins. Ass'n v. Health & Welfare Plans, Inc.*, 961 F.2d 588 (6th Cir.1992). However, defendant maintains that no conflict exists between the COB provisions of the Plan and the no-fault policy because the no-fault policy explicitly subordinates its coverage to other insurance coverage, while the Plan merely references "no-fault auto coverage" but does not proceed to specifically subordinate itself to the no-fault policy.

In *Auto Owners Ins. Co. v. Thorn Apple Valley*, 31 F.3d 371, 374 (6th Cir.1994), the Sixth Circuit held that "when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause, must be given full effect." However, relying on *Auto Club Ins. Ass'n v. Frederick & Herrud*, 443 Mich. 358, 505 N.W.2d 820 (1993), the *Thorn Apple Valley* court cautioned that preemption "does not necessarily mean that the ERISA plan must prevail." Rather, any conflict between COB provisions should be resolved under federal common law. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Lincoln Mut. Casualty Co. v. Lectron Prods. Inc., Employee Health Benefit Plan*, 970 F.2d 206 (6th Cir.1992); *Auto Club Ins. Ass'n v. Health and Welfare Plans, Inc.*, 961 F.2d 588 (6th Cir.1992).

After noting that the "underlying purpose of ERISA is to protect 'the interests of participants in employee benefit plans and their beneficiaries,'" the court in *Thorn Apple Valley*, 31 F.3d at 375, determined that, "Congress sought to guard qualified benefit plans from claims ... which have been *expressly disavowed* by the plans." (emphasis added)

In the present case, plaintiff Dayton Hudson's Plan contains a coordination of benefits section that discusses coordination of benefits and primary and secondary liability and even provides an "order of benefit determination." However, it does not "expressly disavow" or subordinate itself to a no-fault automobile insurance policy. The Plan provides:

If you or your dependents incur medical expenses for which benefits are payable under this Plan and another plan, such as additional insurance, student coverage at a university, or no-fault auto coverage, the Coordination of Benefits provision will be applied.

CARVE-OUT

If benefits are payable by this plan and another plan, the benefits will be coordinated so that deductibles and copayments are preserved and you *and* your dependents do not receive duplicate payments for medical expenses.

The Plan then distinguishes between primary and secondary liability and provides a four-step protocol ("ORDER OF BENEFIT DETERMINATION") to determine the priority of coverage between two available plans. It provides:

If a person is covered under this plan and another plan at the same time, the plans will pay benefits in this order:

1. The plan that covers the person as an employee pays first. The plan that covers the person as a dependent pays second.

2. For children's expenses, the primary plan is the plan of the male parent and the secondary plan is the plan of the female parent.

   [provision dealing with divorced or separated parents omitted]

3. If the above rules don't establish an order, the plan which has covered the person as an employee or as that employee's dependent for the longer period of time will pay first with the following exception:

   The plan covering an active employee would pay before the plan of a laid-off or retired employee.

4. Any plan that does not contain a Coordination of Benefits provision automatically pays first.

In contrast, an endorsement to the no-fault policy states:

It is agreed that the limits of liability provision of Section IV of the Michigan No–Fault Insurance Endorsement attached to and forming a part of this policy, which provides that benefits payable under this policy shall be reduced by certain benefits from other sources, is amended by addition of the following:

5. © any health, disability or automobile medical expense insurance policy; any health care plan; or any salary or wage continuation plan, including sick pay benefits; but this provision © shall apply only with respect to the named insured and any relative.

It is clear that the Plan documentation did not "expressly disavow" or subordinate its coverage to the no-fault insurance. Whereas, it is equally clear that the no-fault policy did subordinate its coverage to the Plan's coverage. If the Plan had subordinated its coverage to the no-fault insurance, the Plan would have prevailed under *Thorn Apple Valley*. However, it simply did not. Consequently, the Plan's coverage is primary and the no-fault coverage is secondary. Accordingly, the Court will grant defendant's motion for summary judgment.