**ALLSTATE INSURANCE COMPANY,
Plaintiff,**

v.

**AMERICAN MEDICAL SECURITY,
INC., Defendant.**

**No. 96–74200.**

United States District Court,
E.D. Michigan,
Southern Division.

June 25, 1997.

---

John Seyfried, Port Huron, MI, for Plaintiff.

Arthur LeVasseur, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter came before the court at a hearing on June 25, 1997, on the parties' cross motions for summary judgment. Plaintiff, an auto insurer, and Defendant, an ERISA insurer, each claim the other is liable to pay the medical expenses resulting from an insured's auto accident. For the reasons set forth below, Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

### I. Facts

Plaintiff, Allstate Insurance Company, is a no-fault auto insurer under Michigan law. Defendant, American Medical Security, Inc., is the administrator of an employee welfare benefit plan established by Simplified Employment Services, Inc. The plan is governed by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. Michael Buckley is the insured under the Allstate automobile policy and is a plan participant under the American Medical ERISA plan. Michael Buckley and his dependants are entitled to insurance benefits under the Allstate policy and the ERISA plan.

On October 30, 1995, David Buckley (Michael Buckley's dependant) was injured in an automobile accident. Allstate provided coverage for the expenses incurred as a result of the accident. However, Allstate now seeks to recover from Defendant monies it expended for David Buckley's medical expenses. Allstate filed a complaint seeking a declaratory judgment.

The Allstate policy contains a coordination of benefits clause under the Michigan No Fault Insurance Act, Mich. Comp. Laws Ann. § 500.3109(a). The coordination of benefits clause provides:

Coordination of Benefits

1. If Allowable Expenses are identified as excess on the declarations page, Allowable Expenses benefits will be reduced by any amount paid or payable under the provisions of any:

 a) individual, blanket or group accident disability or hospitalization insurance.

 b) medical or surgical reimbursement plan.

 c) automobile no-fault benefits or medical expense benefits, or premises insurance affording medical expense benefits.

Plaintiff's motion for summary judgment, Exhibit A, p. 18. Allstate claims that under this clause, the ERISA plan is primarily liable for the insured's medical expenses, and the Allstate policy is secondarily liable.

American Medical counters that under the terms of the ERISA plan, it is not at all liable for the insured's medical expenses. The ERISA plan contains an excess coverage clause which provides:

Excess Coverage

No benefits are payable by the Plan for injury or sickness for which there is other non-group insurance providing medical

payments or medical expense coverage, regardless of whether the other coverage is primary, excess, or contingent to the Plan. Plaintiff's motion for summary judgment, Exhibit C, p. 35. Pursuant to the excess benefits clause, American Medical contends that it is not liable to the insured for any benefits. The parties have filed cross motions for summary judgment, each arguing that as a matter of law, the other is liable to the insured for medical benefits.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a party seeking a declaratory judgment may move for summary judgment any time after the expiration of 20 days from the commencement of the action. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. Analysis

The Sixth Circuit addressed the issue of conflicting insurance policies in *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371 (6th Cir.1994), holding that where an ERISA policy directly conflicts with an auto policy, the terms of the ERISA policy govern. In that case, the insured was injured in a car accident. The insured was covered by auto insurance and an ERISA plan. Each insurer claimed that the other was liable for medical benefits. The no fault auto insurance policy contained a coordination of benefits provision providing that the insurer was only liable for personal injury benefits to the extent that such benefits were not covered by any health insurance plan. The ERISA plan also contained a coordination of benefits provision which provided as follows:

> In addition to the benefits payable under this Plan, sometimes an employee or dependent is entitled to benefits for the same hospital or medical expenses under Group Fault or No–Fault Auto Insurance ... or another group plan. Should this type of duplication occur, the insurance does not apply to any liability for losses covered by a primary contributory, excess, secondary or any other coverage of any other basis by any other insurance company, under any other types of circumstances, particularly such benefits as may be payable under any type of coordinating policy with an automobile insurance carrier for first party benefits under MCLA 500.3109 et seq.

In sum, the auto policy and the ERISA plan were in direct conflict because each purported to make the other primarily liable for medical payments.

The Sixth Circuit first noted that ERISA preempts Mich. Comp. Laws Ann. § 500.3109, the Michigan No–Fault Act provision regarding coordination of benefits. Further, because ERISA does not contain any provisions governing this type of conflict between insurance policies, federal common law applies. *Id.* at 374. The court noted that ERISA plans should be uniformly interpreted. Further, the underlying purpose of ERISA is to protect employee benefits plans and their participants. The court explained, "In our view, this directive means that Congress sought to guard qualified benefit plans from claims, such as that advanced by Auto Owners, which have been expressly disavowed by the plans." *Id.* at 375. Accordingly, the Sixth Circuit held that the terms of the ERISA plan should be given full effect and the auto insurer should be primarily liable.

> Accordingly, we conclude that the terms of the [ERISA] plan, including its coordination of benefits clause, must be given full effect in order to comply with the primary goal of ERISA, which is to safeguard the

financial integrity of qualified plans by shielding them from unanticipated claims. *Id. Accord Great West Life & Annuity Ins. Co. v. Titan Index. Co.*, No. 95–72351 (E.D.Mich. Feb. 18, 1997) (Cohn, J.) (following *Thorn Apple* and holding that where coordination of benefits provisions conflict, ERISA plan governs).

■ Where an ERISA plan does not expressly subordinate its coverage to other coverage and an auto insurance policy does subordinate its coverage, there is no direct conflict between the policies. In these circumstances, the ERISA plan is the primary insurer and the auto policy is the secondary insurer. In *Dayton Hudson Dept. Store Co. v. Auto–Owners Ins. Co.*, 953 F.Supp. 177 (W.D.Mich.1995), the auto insurance policy expressly subordinated coverage to any health care plan. The auto policy provided, "It is agreed that the limits of liability provision ... which provides that benefits payable under this policy shall be reduced by certain benefits from other sources ... [including] any health care plan." *Id.* at 180. In contrast, the ERISA plan at issue did not expressly disavow coverage or subordinate its coverage. The ERISA plan provided for coordination of benefits as follows:

If you or your dependants incur medical expenses for which benefits are payable under this Plan and another plan, such as ... no-fault auto coverage, the Coordination of Benefits provision will be applied. If a person is covered under this plan and another plan at the same time, the plans will pay benefits in this order:

1. The plan that covers the person as an employee pays first. The plan that covers the person as a dependant pays second.
2. For children's expenses, the primary plan is the plan of the male parent and the secondary plan is the plan of the female parent.
3. If the above rules don't establish an order, the plan which has covered the person as an employee or as that employee's dependant for the longer period of time will pay first with the following exception: The plan covering an active employee would pay before the plan of a laid-off or retired employee.

4. Any plan that does not contain a Coordination of Benefits provision automatically pays first.

*Id.* The court in *Dayton Hudson* reasoned that because the ERISA plan did not "expressly disavow" coverage, the case was distinguishable from *Thorn Apple* and it was not necessary that the terms of the ERISA plan prevail. As a result, the court held that the ERISA plan provided primary coverage and the no-fault policy provided secondary coverage. *Accord Campbell Soup Co. v. Allstate Ins. Co.*, 4:95–CV–38, 1996 WL 931576 (W.D.Mich. Jan. 9, 1996) (Bell, J.) (where ERISA plan did not expressly subordinate its coverage and auto policy did subordinate, there is no direct conflict between the policies; ERISA plan must provide primary coverage).

■ This case is more closely analogous to *Thorn Apple* than it is to *Dayton Hudson.* Here, American Medical's ERISA plan expressly disavows coverage when there is coverage by another *non-group* policy. "No benefits are payable by the Plan for injury or sickness for which there is other non-group insurance providing medical payments or medical expense coverage, regardless of whether the other coverage is primary, excess, or contingent to the Plan." Thus, because Congress sought to guard ERISA plans from claims like Allstate's which have been expressly disavowed, the terms of the ERISA plan should prevail. *Thorn Apple,* 31 F.3d at 375.

Allstate argues that *Thorn Apple* applies only where two policies have coordination of benefits clauses that are unambiguous and irreconcilable. Allstate claims that such is not the case here, contending that the "excess benefits" clause in the ERISA plan is not a coordination of benefits clause. Allstate points to another provision in the ERISA plan entitled "coordination of benefits" which provides:

Coordination of Benefits If any person is covered by this Plan and other *group plans* at the same time, this Plan will coordinate benefits with the other plans to avoid duplicate coverage of the same claim.... This Plan will coordinate with other plans which are: group or blanket

insurance, Blue Cross or other type of prepayment coverage providing benefits or service for health care or treatment. Other plans also include government programs (except for medical assistance) and no-fault automobile insurance. The plans determine which one is primary as follows:

1. The plan covering the person as an employee determines it benefits before the plan covering the person as a dependent.

2. When a child is covered under plans of both parents, the plan covering the parent whose birth date (month and day) occurs first in a calendar year covers the child first....

3. If 1 and 2 do not determine which plan pays first, the plan covering the person as an active employee pays before a plan covering the person who is laid off or retired.

4. If 1, 2 or 3 do not determine which pays first, the plan which covered the person for the longer period of time pays first.

Plaintiff's motion for summary judgment, Exhibit C, pp. 31–32 (emphasis added). Allstate points out that the auto policy was issued without regard to employment status or dependency, and claims that paragraphs 1 through 3 of the coordination of benefits clause cannot logically be applied to the auto policy.[1] Further, Allstate claims that paragraph 4, the catch all provision providing that the plan which covered the person longer pays first, does not expressly disavow or subordinate coverage. *See Dayton Hudson,* 953 F.Supp. 177 (finding similar catch all provision did not unambiguously disavow or subordinate coverage). Thus, Allstate reasons, because the ERISA plan does not disavow or subordinate its coverage and the auto plan does subordinate its coverage, the policies do not conflict and the court should find the ERISA plan primarily liable.

Allstate's argument is erroneous for two reasons. First, the coordination of benefits provision in the ERISA plan expressly applies only to group plans, not to individual insurance policies like the Allstate policy. Second, although the provision that applies to individual plans is entitled "excess benefits," by its terms that provision applies to non-group policies and disavows coverage providing, "[n]o benefits are payable by the Plan for injury or sickness for which there is other non-group insurance...."

■ Allstate also argues that the ERISA plan is ambiguous and thus should be interpreted to provide primary coverage. Allstate claims that on one hand the ERISA plan's coordination of benefits clause provides that if there is another insurance policy, the Plan will be primary in some circumstances and secondary in others. On the other hand, the Plan's excess coverage provision provides that if there is another insurance policy, there will be no Plan coverage whatsoever. In making this argument, Allstate overlooks the fact that the Plan's coordination of benefits clause applies to group policies and the excess coverage provision applies to individual policies. When the provisions are interpreted as applying to group versus non-group policies, there is no conflict or ambiguity.

Allstate also argues that the coordination of benefits provision applies to no-fault auto policies, as it provides "[T]his Plan will coordinate benefits with the other plans ... Other plans also include government programs (except for medical assistance) and *no-fault automobile insurance.*" Again, the coordination of benefits section applies to group plans. Such group plans may include group no-fault automobile insurance. The Allstate policy in this case is an individual (non-group) policy.

■ Finally, Allstate contends that the term "group" in the coordination of benefits provisions should not be interpreted to mean "group insurance provider." It should be interpreted to include an individual auto policy like the Allstate policy. In making this argument Allstate relies on *Great West Life & Annuity Ins. Co. v. Titan Index. Co.,* No. 95–72351, 1997 WL 720725 (E.D.Mich. Feb. 18, 1997) (Cohn, J.) where the court found that the "suggestion that 'group' should be

---

1. American Medical notes that the coordination of benefits provisions classifying plans based on the employment status and dependency status of the claimant are logical when considered in light of the fact that the clause applies to group plans.

read as 'group insurance provider' strains credulity." *Id.* at *7.

Allstate's reliance on *Great West* is misplaced, as the court in that case interpreted a substantially different use of the word "group." In *Great West,* the ERISA plan at issue contained a coordination of benefits catch all provision: "If none of the above rules establishes the order of payment, a plan under which the person has been covered for the longer time will determine its benefits before a plan covering that person for a shorter time. Two successive plans of the same group will be considered one plan...." The auto insurer Titan argued that the phrase "successive plans of the same group" only applied to successive plans of the same group insurance carrier and did not apply to the individual no-fault policy. The court noted that the coordination of benefits clause specifically applied to group and non-group plans. *Id.* at *6. There was no reason that the successive policies language would only apply to group plans. Thus, the term "group" in the successive policies clause did not mean only group plans. The successive policies term focused on the continuity of coverage, not the type of coverage. *Id.* at *7.

This is vastly different policy language than the policy language here. Here, the ERISA plan's coordination of benefits clause provides, "If any person is covered by this Plan and other *group plans* at the same time, this Plan will coordinate benefits with the other plans to avoid duplicate coverage...." The term used, "group plan," generally defines the other policies to which the coordination of benefits clause applies. The phrase used is not, "successive plans of the same group," the term 'group' being used to mean "kind" or "category," not group insurance plan, and being used to apply to both group and non-group policies.

In sum, because Congress sought to guard ERISA plans from claims like Allstate's which have been expressly disavowed, the terms of the ERISA plan must prevail. *Thorn Apple,* 31 F.3d at 375. Accordingly, Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

Defendant also requested attorney fees and costs in its prayer for relief. Because Defendant cites no authority for the request and did not submit an affidavit of fees and costs, the request for fees and costs is denied without prejudice.

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the court hereby orders as follows:

American Medical Security Inc.'s motion for summary judgment is GRANTED.

Allstate Insurance Company's motion for summary judgment is DENIED.

The complaint is hereby DISMISSED.