AUTO OWNERS INSURANCE COMPANY, a Michigan insurance corporation, Plaintiff–Appellee,

v.

THORN APPLE VALLEY, INC., Defendant–Appellant.

No. 93–1606.

United States Court of Appeals, Sixth Circuit.

Argued May 5, 1994.

Decided Aug. 1, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 26, 1994.

Daniel S. Saylor (argued and briefed), Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, MI, John P. Seyfried, Garan, Lucow, Miller, Seward, Cooper & Becker, Port Huron, MI, for plaintiff-appellee.

Bradley T. Raymond (argued and briefed), Finkel, Whitefield & Selik, Farmington Hills, MI, for defendant-appellant.

Before: NORRIS and DAUGHTREY, Circuit Judges; and GILMORE, Senior District Judge.*

ALAN E. NORRIS, Circuit Judge.

This narrowly focused appeal presents a question of federal common law that stems from a dispute between two insurers, one of which qualifies as an employee welfare benefit plan under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. At issue is the extent to which conflicting coordination of benefits ("COB") clauses affect the relative liability of the parties.

## I.

Plaintiff, Auto Owners Insurance Company ("Auto Owners"), is a Michigan insurance carrier that issues no-fault automobile insurance policies as part of its business. Michigan law regulates the terms of such policies. This statutory scheme contains the following provision:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section are subject to prior approval by the commissioner and apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household.

---

* The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Mich. Comp. Laws Ann., § 500.3109a (West 1993). Pursuant to this section, Auto Owners issued a no-fault automobile insurance policy to Joseph Shattuck that included a coordination of benefits clause. This clause provided that Auto Owners, as the no-fault carrier, would be liable to Shattuck for personal injury benefits only to the extent that such benefits were not covered by any health insurance plan he might have.

At the time that his Auto Owners policy was in force, Mr. Shattuck also had health care coverage through his employer, defendant, Thorn Apple Valley, Inc. ("TAV"). Neither party disputes that TAV provided this coverage in the form of an ERISA employee welfare benefit plan, as defined at 29 U.S.C. § 1002(1). Like the Auto Owners policy, the TAV plan contained a coordination of benefits clause:

> In addition to the benefits payable under this Plan, sometimes an employee or dependent is entitled to benefits for the same hospital or medical expenses under Group Fault or No–Fault Auto Insurance ... or another group plan. Should this type of duplication occur, the insurance does not apply to any liability for losses covered by a primary contributory, excess, secondary or any other coverage of any other basis by any other insurance company, under any other types of circumstances, particularly such benefits as may be payable under any type of coordinating policy with an automobile insurance carrier for first party benefits under MCLA 500.3109 et seq.

As this language makes clear, the TAV plan was in direct conflict with the Auto Owners policy with respect to coordination of benefits; both the plan and the policy purported to make the other primarily liable for payment of medical expenses.

This potential conflict became reality when Joseph Shattuck's son, Chris, was injured in an automobile accident on June 18, 1989. Auto Owners paid his medical expenses. When approached by Auto Owners for reimbursement, the TAV plan declined coverage based upon its COB clause.

As a result, Auto Owners filed a complaint for declaratory relief in Michigan state court, contending that the effect of M.C.L.A.

§ 500.3109a and the COB clause in its policy was to entitle it to "recoupment" from the TAV plan of the medical expenses paid to Chris Shattuck. TAV subsequently removed the cause to federal district court pursuant to 28 U.S.C. § 1331.

The district court disposed of the case after both parties had submitted motions for summary judgment. In a thoughtful opinion, after reviewing case law in the area and attempting to divine trends in our court, the district court concluded that: "When there is a conflict between two unambiguous, valid, and irreconcilable 'other insurance' or coordination of benefits provisions in an ERISA plan and a non-ERISA insurer, such as a Michigan no-fault insurer, the coverage responsibility must be apportioned between the insurers on a *pro rata* basis." *Auto-Owners Ins. Co. v. Thorn Apple Valley, Inc.*, 818 F.Supp. 1078, 1083 (W.D.Mich.1993). Applying this rule, the court then apportioned to each party fifty percent of the liability for Chris Shattuck's medical expenses.

## II.

The issue before us has generated a division of opinion from courts that have visited it. On the one hand, the Seventh Circuit has endorsed the pro rata approach advocated by the district court. *Winstead v. Indiana Ins. Co.*, 855 F.2d 430 (7th Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989). On the other hand, the Michigan Supreme Court, anticipating the development of federal common law in this circuit, recently held that a no-fault insurer could not seek payment from an ERISA plan despite a coordination of benefits clause that purported to make the no-fault insurer only secondarily liable for medical expenses. *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.*, 443 Mich. 358, 505 N.W.2d 820 (1993), *cert. denied,* ——— U.S. ———, 114 S.Ct. 1300, 127 L.Ed.2d 652 (1994). The district court did not have this opinion before it, as it was issued several months after the district court's ruling. Although this court has been confronted on at least two occasions with a fact pattern similar to the one now before us, the court has not previously reached the issue. *See Lincoln Mut. Casualty Co. v. Lectron Prods. Inc.,*

*Employee Health Benefit Plan,* 970 F.2d 206 (6th Cir.1992); *Auto Club Ins. Ass'n v. Health and Welfare Plans, Inc.,* 961 F.2d 588 (6th Cir.1992).

■ For the reasons outlined below, we conclude that when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause, must be given full effect.

### A. Jurisdiction

■ Before reaching the merits of the case, we must first determine whether the district court had jurisdiction. Faced with a nearly identical fact pattern in *Auto Club,* this court found that jurisdiction was proper pursuant to 29 U.S.C. § 1132(a)(1)(B).[1] *Auto Club* at 590. As TAV points out, that section empowers a select group of persons—participants or beneficiaries—to bring civil actions. Auto Owners falls into neither of these categories and the company concedes that ERISA contains no provision specifically according it the right to bring a cause of action.

Nonetheless, cases from this circuit have premised jurisdiction on federal common law when the ERISA preemption provision has effectively deprived a plaintiff of a state law claim. *See, e.g., Kentucky Laborers Dist. Council Health and Welfare Fund v. Hope,* 861 F.2d 1003, 1005 (6th Cir.1988); *Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 794 F.2d 221 (6th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986). Accordingly, in this circuit, in cases such as this one, where the outcome rests upon the district court's construction of federal common law, jurisdiction is grounded upon 28 U.S.C. § 1331. *Whitworth* at 236.

### B. Preemption

■ Neither party disputes that ERISA preempts M.C.L.A. § 500.3109a. *See Auto Club,* 961 F.2d at 593 (discussing *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)). Thus, the reliance that plaintiff once placed upon the Michigan statutory scheme governing no-fault automobile insurance has been abandoned.

■ However, as the opinion in *Auto Club* noted, this consideration does not necessarily mean that the ERISA plan must prevail:

> There still exists here the issue of which of two apparently valid insurance policies containing what would appear to be irreconcilable "other insurance" clauses is liable for payment of [insured's] medical expenses. . . .
>
>     . . . .
>
> . . . The fact that, after *FMC,* the Auto Club policy no longer has priority over the [ERISA] Fund plan by virtue of 500.3109a does not, we reiterate, render the Auto Club coordination of benefits clause *ipso facto* void.

*Id.* Because no federal statute addresses the resolution of the conflict between the COB clauses, application of federal common law is appropriate. *Lincoln Mutual,* 970 F.2d at 211.

### C. The Common Law Rule

Since the Supreme Court's landmark *Erie Railroad* decision,[2] development of federal common law has been sharply curtailed. In some contexts, however, it remains a viable source of authority. On occasion, Congress explicitly directs the federal courts to develop a body of common law to fill in the interstices of a statutory scheme in order to ensure national uniformity of application. ERISA presents just such a situation, where federal common law is expected to develop and address rights and obligations arising under the Act. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95

---

1. That section reads as follows:

    § 1132. Civil Enforcement
    (a) Persons empowered to bring a civil action
    A civil action may be brought—
    (1) by a participant or beneficiary—
    . . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
29 U.S.C. § 1132 (1988).

2. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

L.Ed.2d 39 (1987); *In re White Farm Equipment Co.,* 788 F.2d 1186, 1191 (6th Cir.1986).

The underlying purpose of ERISA is to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)). In our view, this directive means that Congress sought to guard qualified benefit plans from claims, such as that advanced by Auto Owners, which have been expressly disavowed by the plans.

While we agree that both COB clauses at issue are facially valid, we cannot accept the Seventh Circuit's conclusion that a "solomonic apportionment of liability" is appropriate. *Winstead,* 855 F.2d at 434. Such a result may be, as *Winstead* suggests, "eminently fair," but it accords insufficient weight to the policy considerations behind the enactment of ERISA. Our situation is unlike the one where the competition is between COB clauses in nonqualifying private insurance policies. There, the playing field is level; here it is not, since the TAV clause is bolstered by the preemptive effect of ERISA.

Accordingly, we conclude that the terms of the TAV plan, including its coordination of benefits clause, must be given full effect in order to comply with a primary goal of ERISA, which is to safeguard the financial integrity of qualified plans by shielding them from unanticipated claims.

### III.

For the foregoing reasons, the judgment of the district court is **reversed** and this cause is **remanded** with instructions that judgment be entered in favor of defendant, Thorn Apple Valley, Inc.